**James Robert CROSBY, Plaintiff,**

v.

**The GENERAL TIRE & RUBBER COMPANY, Defendant-Third-Party Plaintiff-Appellant,**

v.

**VULCAN PAINTERS, INC., etc., et al., etc., Third-Party Defendants-Appellees.**

**No. 75–2059.**

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1976.

Rehearing Denied Jan. 14, 1977.

---

Charles E. Sharp, George M. VanTassel, Jr., Birmingham, Ala., for defendant-third-party plaintiff-appellant.

Bibb Allen, Birmingham, Ala., for Vulcan, etc.

Before RIVES,* GEWIN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

I. Introduction.

A flash fire inside a chemical tank at the Columbus, Mississippi plant of General Tire and Rubber Company (General Tire) severely burned James Crosby, who was inside the tank painting it. The work was being done pursuant to a contract between General Tire and Vulcan Painters, Inc. (Vulcan), the Alabama company that employed Crosby.

Crosby received workmen's compensation from Vulcan. Then Crosby filed a suit against General Tire, claiming that General Tire had departed from the standard of ordinary care with respect to the safety of Crosby's workplace. General Tire filed a

---

* Judge Rives, was a member of the panel that heard oral argument but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

third party complaint seeking indemnity from Vulcan and from Assurance Company of America (Assurance), Vulcan's liability insurer. The district court granted summary judgment in favor of Vulcan and Assurance and certified the order in compliance with Fed.R.Civ.P. 54(b). General Tire settled the suit brought by Crosby for $187,500.00, and the district court entered a consent judgment with respect to that claim.

General Tire appeals the district court's order granting summary judgment to Vulcan and Assurance in the third party action seeking indemnity.

Had it not been for the parties' failure to keep a close eye on the Mississippi legislature, this dispute in all its complexity would not have occurred. Several weeks before General Tire and Vulcan entered into their painting contract, a Mississippi statute became effective that declared void certain contracts for indemnity. We shall discuss this measure in some detail below, but suffice it to say that, had the parties known of the statute in time, they surely would have fashioned their agreement to take account of it. The statute took them by surprise, however, and now General Tire, the statute's victim, seeks some path around it.

II. The Express Contract of Indemnity.

The written contract entered into by General Tire and Vulcan contained a promise by Vulcan to hold General Tire harmless for all liability arising out of performance of the work. The district court held that indemnity could not be predicated on that promise, because such promises are void under the aforementioned Mississippi statute, which was in force at the time the contract was made. The statute reads:

(a) With respect to all public or private contracts or agreements, for the construction, alteration, repair or maintenance of buildings, structures, highway bridges, viaducts, water, sewer or gas distribution systems, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise and/or agreement con-tained therein to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

(b) This act does not apply to construction bonds or insurance contracts or agreements.

Miss.Code Ann. § 31–5–41 (1972).

General Tire advances three theories in its search for some route around the statute. We reject all three.

### A. *A Proposed Exception for Those of Equal Bargaining Strength.*

■ General Tire invites us to do a little legislating. It urges that we carve an exception to the statute, preserving from its operation those indemnity provisions negotiated by knowledgeable businessmen of relatively equal bargaining strength. No such exception, of course, appears in the statute itself, and we have no legislative history suggesting that the scope of the measure was intended to be so limited. Thus, while the proposed exception might have some merit as a policy matter, it is not for us to amend the statute.

### B. *Recovery for Vulcan's Negligence.*

■ The indemnity agreement between General Tire and Vulcan states:

Seller [Vulcan] will indemnify, save harmless and defend buyer [General Tire] from all liability for loss, damage or injury to person (including employees or agents of the seller) or property in any manner arising out of or incident to the performance of the contract.

General Tire argues that even if the Mississippi statute blocks indemnity for General Tire's *own* negligence, the statute does not prohibit recovery under the agreement for that portion of the Crosby settlement attributable to Vulcan's negligence. For the purpose of this discussion, we treat the Crosby settlement as recompense for General Tire's liability to Crosby—liability generated by General Tire's actual negligence.[1]

---

1. If the Crosby suit had not ended with the consent judgment, it would have produced one of two results—either a judgment against General Tire based on a finding that General Tire

General Tire's point seems to be that, even though the liability represented by the settlement is General Tire's liability, the fault for the injury is shared by Vulcan, and therefore the settlement burden ought to be shared by Vulcan. It is a nice distinction, and one that might be allowed under the Mississippi statute, but we cannot find the distinction recognized expressly or impliedly in the straightforward indemnity provision entered into by the parties. That provision operates on the basis of *liability*. The liability here is General Tire's liability, arising from General Tire's negligence. It is that liability that the agreement would shift to Vulcan were it not for the statute. The statute blocks indemnity for one's own negligence. That ends the matter. The agreement does not recognize any sort of contractual contribution insulated from the operation of the statute, and we decline to rewrite the agreement so that it avoids the effect of the statute.

### C. *The Insurance Exception.*

■ General Tire contends that only *uninsured* indemnity agreements are voided by the statute, because insured agreements are preserved by section (b), which states that "[t]his act does not apply to construction bonds or insurance contracts or agreements.",

General Tire's interpretation of section (b) contradicts the plain language of the section. Section (b) exempts *insurance* contracts, not insured *indemnity* contracts, from the operation of section (a). The purpose of section (b) can be illustrated in this way. If General Tire had realized that it could not rely on the indemnity agreement with Vulcan to protect it against liability, it likely would have arranged for its own lia-

bility insurance. Such an insurance contract would have come within the terms of section (b). The drafters of the statute, we conclude, did not mean to abrogate such insurance agreements and, perhaps out of an abundance of caution, they added section (b).

Section (b) in fact operates to preserve the agreement between Vulcan and its insurer, Assurance. But that does General Tire no good, because section (a) cuts the link between Vulcan and General Tire, and General Tire can reach Assurance only through Vulcan.

### III. Implied Indemnity a la *Ryan.*

■ We need not tarry long on this next point. General Tire argues that recovery is available under a doctrine of implied indemnity illustrated in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1955). We have held already that Mississippi law recognizes no such implied indemnity. *Smith Petroleum Service, Inc. v. Monsanto Chemical Co.*, 420 F.2d 1103 (5th Cir. 1970). General Tire has cited no Mississippi authority that convinces us that our analysis in *Smith Petroleum* was incorrect. We adhere, therefore, to the holding in that case.

### IV. Quasi-Contractual Indemnity.

■ General Tire seeks the aid of a common law doctrine, recognized in Mississippi,[2] allowing indemnity in some circumstances to prevent unjust enrichment. General Tire asks the opportunity to present to a jury the following factual scenario, which it contends would mandate the application of this quasi-contractual indemnity. First, the

---

was negligent or a judgment that General Tire was free of negligence. Because the settlement was settlement of the suit by Crosby against General Tire, the settlement must be considered recompense to Crosby for General Tire's liability. Indeed, in any indemnity proceeding, General Tire's threshold burden would be to show that it was liable to Crosby and that the settlement, therefore, was not the act of a volunteer. *See Bush v. City of Laurel*, 215

So.2d 256, 260 (Miss.1968); *Southwest Mississippi Electric Power Association v. Harragill*, 254 Miss. 460, 182 So.2d 220 (1966).

2. *Home Ins. Co. of N. Y. v. Atlas Tank Mfg. Co.*, 230 So.2d 549 (Miss.1970); *Bush v. City of Laurel*, 215 So.2d 256 (Miss.1968); *Southwest Miss. Elec. Power Ass'n v. Harragill*, 254 Miss. 460, 182 So.2d 220 (1966).

fire that burned Crosby happened because a valve leaked, causing the highly inflammable chemical MEK to seep into the tank where Crosby was painting.[3] Second, General Tire departed from the standard of ordinary care when it failed to discover[4] and remedy the leak in the valve. Third, Vulcan departed from the standard of ordinary care, because Vulcan failed to train and equip Crosby properly.

General Tire contends that quasi-contractual indemnity would apply on such a record because the law would characterize General Tire's negligence as "passive" and Vulcan's negligence as "active." Since the litigation is here on appeal from a grant of summary judgment, we shall assume that General Tire can prevail with respect to all of the factual allegations that form the foundation of its quasi-contractual indemnity argument.[5] We think the district court was correct in concluding that, even were General Tire to prevail on all of the factual allegations, recovery would not be available under Mississippi law.

The Mississippi case upon which General Tire relies most heavily to support its active-passive negligence argument is *Bush v. City of Laurel*, 215 So.2d 256 (Miss.1968). In *Bush*, a municipality sought indemnity from an independent contractor after the city was held liable to a third party who had fallen into a ditch. The liability of the city was based on its non-delegable duty to provide reasonably safe streets and sidewalks. The Mississippi court held that indemnity against the independent contractor

was appropriate because the contractor had caused the dangerous condition.

The *Bush* case is distinguishable from this one. In *Bush*, liability of the city was not founded upon any actual departure by it from the standard of ordinary care. The city's liability grew out of its non-delegable duty to provide reasonably safe streets and sidewalks. The Mississippi court therefore allowed the city to recover over against the real culprit—the independent contractor. Only the independent contractor actually had departed from the standard of ordinary care.

Here, General Tire does not assert that its liability to Crosby, if any, was vicarious, *i. e.,* imposed irrespective of fault. The General Tire scenario assumes actual fault in the failure to inspect and repair the leaking valve. Thus, while in the *Bush* case a party not at fault was allowed recovery over against the actual wrongdoer, here General Tire, an actual wrongdoer, seeks recovery over against another alleged actual wrongdoer. Only a significant extension of *Bush* would mandate such indemnity.

General Tire would have us attach controlling importance to the fact that General Tire's negligence was a failure to discover a defect, and it is true that the *Bush* court used language that focused on such failure. The *Bush* opinion states that indemnity is appropriate "when one party does the act or creates a dangerous condition and the other party is liable or because of passive negligence in failing to remedy the defect or because of a non-delegable statutory

---

3. Crosby states in his deposition that MEK was entering the tank through a leaking valve. General Tire accepts this explanation for the purpose of its argument.

4. There is some doubt whether General Tire could claim successfully that it was without knowledge of the leak. It is uncontradicted that a General Tire employee had been informed of the leak and had attempted to fix it by tightening the valve. Nevertheless, we assume that General Tire could show it was unaware of the leak.

5. *See, e. g., Steed v. Central of Ga. Ry.*, 477 F.2d 1303 (5th Cir. 1973); 6 Moore's Federal Practice ¶ 56.27[1] (1976).

   We are keenly mindful of the care that must be used in granting summary disposition with respect to the question of active-passive negligence. The issue, however, does not always require a trial. *Compare Halliburton Co. v. Norton Drilling Co.*, 302 F.2d 431, 434 (5th Cir. 1962), *and Saad v. John E. Smith's Sons Co.*, 399 F.Supp. 523, 524 (E.D.Mich.1975), *with McPhee v. Oliver Tyrone Corp.*, 489 F.2d 718, 720 (5th Cir. 1974). Here, as we have noted, General Tire's own theory, as expressed in its brief, is deficient as a matter of law. Thus, a

duty." [6] 215 So.2d at 260. We do not believe the Mississippi court meant to indicate by that language that a failure to remedy a defect always must be characterized as passive negligence. A careful reading of the passage suggests that "the defect" to which the opinion refers means the defect created by the would-be indemnitor. That is to say, when one party creates a defect and a second party fails to remedy that defect, the party that created the defect must indemnify the party whose only negligence was a failure to discover and remedy it. No indemnity is due if the would-be indemnitor did not create the defect in the first place.[7] This reading comports, we believe, with the scope generally accorded quasi-contractual indemnity in the reported cases. *See* Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 U.Pa.L.Rev. 130, 154–58 (1932). Moreover, the reading makes sense. If one party creates a defect that causes harm and then escapes liability, and another party shoulders the burden only on account of a failure to remedy the mischief, unjust enrichment seems clearly present. Liability should be shifted to the original wrongdoer.

General Tire's theory of the case clearly does not include the proposition that *Vulcan* created the defect in the valve. Thus, General Tire's actual negligence in failing to discover the leaking valve must be laid alongside Vulcan's alleged actual negligence in failing to train properly a workman, and the equities do not so clearly favor General Tire that it should be able to call on the court to shift the liability entirely to Vulcan. The negligence of each is actual negligence, and no causal link exists between Vulcan and the wrongful conduct of General Tire.

We hold, then, that on the very theory advanced by General Tire, any negligence on its part would be *active* negligence, barring quasi-contractual indemnity.[8]

## V. Summary Judgment for Assurance.

Finally, General Tire argues that Vulcan's liability insurer, Assurance, should be estopped from relying on the Mississippi indemnity statute, because Assurance misled General Tire: "Assurance represented to General Tire that Vulcan had insurance. Relying upon this representation, General

---

trial of the factual issues underlying that theory would serve no purpose.

6. This sentence is structured somewhat peculiarly, making interpretation hazardous. We suspect that the second "or" appears in the text of the opinion only through typographical error.

7. Nothing in *Home Ins. Co. of N. Y. v. Atlas Tank Mfg. Co.,* 230 So.2d 549 (Miss.1970), conflicts with this analysis of the scope of the active-passive negligence doctrine. In *Atlas Tank* an electric utility company was held actively negligent in failing to raise a low-hanging power line. The *Atlas Tank* opinion contains some sweeping language concerning the active-passive negligence concept:

The general rule governing implied indemnity for tort liability is that a joint tort feasor, whose liability is secondary as opposed to primary, or is based upon imputed or passive negligence, as opposed to active negligence, or is negative negligence as opposed to positive negligence, may be entitled, upon an equitable consideration, to shift his responsibility to another joint tort feasor. However, where the fault of each is equal in grade and similar in character, the doctrine of implied

indemnity is not available since no one should be permitted to base a cause of action on his own wrong. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case.

*Id.* at 551. As Professor Leflar has noted in almost this exact context, "[c]omplete observance of the *dictum* that indemnity will be allowed between joint tortfeasors not *in pari delicto* would carry the common law beyond the farthest point to which comparative negligence has ever gone, and beyond the broadest definitions of the doctrine of last clear change." Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 U.Pa.L.Rev. 130, 156 (1932). The rule stops short of the *Atlas Tank dicta,* and the stopping point, we believe, is the one we have described in the text.

8. Because we dispose of the quasi-contractual indemnity issue in the way that we do, we have no occasion to decide whether the exclusivity provision of the Alabama workmen's compensation law would apply here and, if so, whether it would bar General Tire's active-passive negligence claim.

**1134**

Tire allowed Vulcan to Work on its premises." [9]

Assuming Assurance did state that the indemnity contract was insured, that statement was not a misrepresentation. Indemnity was not precluded because of any failure on Assurance's part to insure Vulcan's ability to pay General Tire. Indemnity was barred by the Mississippi statute, which cut the link between General Tire and Vulcan. The link between Vulcan and Assurance was not disturbed by the statute.

Moreover, assuming *arguendo* that Assurance's statement was a misrepresentation, we cannot agree with General Tire's assertion that the misrepresentation was material. General Tire contends that Assurance should have warned General Tire about the Mississippi statute. We will not hear General Tire, a corporation whose Mississippi plant was the site of the events leading to this litigation, to complain that Assurance kept it in the dark about the status of Mississippi law.

The order granting summary judgment in favor of Vulcan and Assurance is

AFFIRMED.

---

9. Brief for Appellant at 33.