ILLINOIS CENTRAL GULF
RAILROAD COMPANY,
Plaintiff-Appellee,

v.

INTERNATIONAL PAPER CO.,
Defendant-Appellant.

No. 86–4233.

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1987.

Louis G. Baine, Jr., Baine & Moore, Jackson, Miss., Kirk G. Forrest, New York City, for defendant-appellant.

Burkett H. Martin, Henry D. Grandberry, III, Ward, Martin, Terry, King & Sorey, Vicksburg, Miss., for plaintiff-appellee.

Before WILLIAMS, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The International Paper Co. (Paper) appeals a judgment that it must indemnify the Illinois Central Gulf Railroad Co. (Railroad) for payments the Railroad made to an injured railroad employee. We affirm in part, reverse in part and remand for a partial new trial.

## I. Background

Paper owns and operates a mill near Redwood, Mississippi. In 1967, Railroad built a railroad spur, or "sidetrack," to the mill, and Paper and Railroad signed a "Track Agreement" that provided:

[Paper] agrees to indemnify [Railroad] for loss, damage, or injury from any act or omission of [Paper] ... to [any] person ... while on or about the [sidetrack]. If any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.

Between 1967 and 1979, Railroad built additional sidetracks to serve the mill. Paper also built a "chip pit" underneath one of the sidetracks to facilitate the unloading of hopper cars that carried wood chips to the mill. Hopper cars resemble boxcars with doors in the bottom. At the time of Newsome's injury, the mill processed as many as forty hopper cars of chips each day. Once a hopper car is positioned over the pit, the doors are opened to let the chips fall out. An underground conveyer then carries the chips from the pit to the mill. In the course of emptying the hoppers, chips spill from the hopper onto a metal walkway alongside the pit.

In 1979, Paper and Railroad signed a "Supplemental Agreement" covering the new sidetracks and chip pit. It provided:

[Paper] shall own and maintain the [additional sidetrack] at its sole cost and risk.

[Paper] shall maintain [the] chip pit ... and the means of supporting [the] track over [the] chip pit ... in a good state of repair.

[Paper] agrees to release, indemnify, and save harmless the Railroad Company from any liability for ... injury to persons ... which the Railroad Company may incur or suffer arising out of or in any way attributable to the failure of [Paper] to observe any of the conditions contained herein or the construction, maintenance, existence, use, operation or removal of said chip pit ... regardless of any negligence of Railroad Company.

The Supplemental Agreement also provided that the "[additional sidetrack] shall be subject to the terms and conditions of [the 1967] agreement."

## II.

H.L. "Lacy" Newsome worked as a flagman and brakeman for Railroad. Newsome and his crew were responsible for moving empty hopper cars off of the chip pit with a switch engine. Newsome claims that he injured his knee at the chip pit on August 3, 1982, when an empty hopper car failed to couple automatically during switching. Newsome contends that he tried to couple the cars manually, but slipped on twelve inches of chips on the walkway next to the pit.

Newsome sued Railroad under the Federal Employers Liability Act, 45 U.S.C. §§ 51–60 (FELA), which authorizes compensation for railroad workers who get hurt because of their employers' negligence. The FELA required Railroad to provide Newsome with a safe place to work even though he worked on Paper's premis-

es. *See Shenker v. Baltimore & Ohio Railroad Co.*, 374 U.S. 17, 83 S.Ct. 1667, 1671–72, 10 L.Ed.2d 709 (1963). The Railroad had potential liability to Newsome under the FELA if it assigned Newsome to work at another company's unsafe plant. *Id.*[1]

In addition, the Safety Appliance Act, 45 U.S.C. § 2 (SAA), requires that railroad cars, such as switch engines and hopper cars, couple and uncouple automatically. A railroad is strictly liable under the FELA for injury caused by a violation of the SAA. *See Crane v. Cedar Rapids & Iowa City Railway Co.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969) ("injured employee [must] prove only the [SAA] violation and thus is relieved of the burden of proving negligence"); *Carter v. Atlanta & St. Andrews Bay Railway Co.*, 338 U.S. 430, 433–34, 70 S.Ct. 226, 228–29, 94 L.Ed. 236 (1949); *O'Donnell v. Elgin, Joliet & Eastern Railway Co.*, 338 U.S. 384, 390–91, 70 S.Ct. 200, 204–05, 94 L.Ed. 187 (1949). Thus, Railroad also had potential liability to Newsome under the FELA if Newsome was hurt while coupling the cars manually.

The Railroad settled with Newsome for $125,000 plus medical expenses and sued Paper for indemnification.

### III.

At trial on the indemnification claim, Newsome presented his version of the accident: that he slipped on twelves inches of chips while trying to couple the cars manually. Nat Hovious, the Railroad claims agent who investigated Newsome's injury, testified that he thought the Railroad was liable to Newsome under the FELA. He also explained that he based the $125,000 settlement on Newsome's income, benefits and work life expectancy.[2]

No one witnessed Newsome's alleged fall, and Paper attempted to discredit Newsome's version of his injury. Hovious revealed that Newsome hurt his knee in 1979 while climbing off a boxcar, and continued to work until August 4, 1982. Newsome admitted that the pit area was well lit and that he knew the chips were piled up on the walkway.

Mike Hudson, a Paper employee who unloaded chip hoppers, testified that several people walked safely along the pit walkway each day to open and close the hopper car doors. Hudson explained that this traffic packs down the chips and provides firm footing on the walkway. Hudson testified that Paper occasionally cleared the walkway of chips, but sometimes as much as six inches (not twelve inches) of chips accumulated on the walkway. Lloyd Nelson, a former superintendent at the Paper mill, testified that no one had been hurt at the pit before Newsome.

Doug Hood, Paper's foreman, and James Womack, Paper's safety director, testified that Newsome did not report an accident until about two weeks after August 3, 1982. This conflicted with the testimony of Frank Norwood, a Railroad conductor working on the day of the accident, who recalled that Newsome told him about the injury thirty minutes after the accident. Paper also introduced into evidence a letter from Dr. Samuel Rowlett, who treated Newsome after his alleged fall. Rowlett, who also had treated Newsome for his 1979 knee injury, wrote that Newsome reinjured his knee as he slipped on chips while "getting off a boxcar" on August 3, 1982. In railyard jargon, a "hopper car" is not the same thing as a "boxcar," and Mike Hudson testified at the trial that "boxcars" are never used at the chip pit.

The district court ruled at the close of the evidence that the 1979 Agreement covered "any injury ... *at* the chip pit" (emphasis added) and required Paper to indemnify the Railroad if its settlement was "reasonable." The court then asked the jury whether the railroad was reasonable in set-

---

1. As set out above, in the 1979 Agreement, Paper agreed to maintain the chip pit area in good order, and Railroad could refuse to operate in an area that Paper failed to maintain properly.

2. In 1981, at the age of 41, Newsome earned $34,000, and had a contractual guarantee to receive at least $26,000 per year from Railroad.

tling with Newsome for $125,000. Regarding reasonableness, the court instructed:

> You are not to consider any issues of liability or fault. . . .
>
> In determining whether the settlement was reasonable . . . you must [compare] the nature of the injuries and the damages incurred to the size of the settlement. [Y]ou may consider the wages and fringe benefits which . . . Newsome would have earned. . . . [If you find the settlement was reasonable], you should return a verdict for [Railroad] for [$125,000].

The jury found that $125,000 constituted reasonable compensation for Newsome's injuries.

On appeal, Paper claims that (1) Mississippi Code Annotated § 31–5–41 forbids it from indemnifying Railroad for Newsome's injury; (2) the 1979 Agreement does not cover Newsome's injury; and (3) the Railroad's settlement was unreasonable. We hold that: (1) the district court correctly handled the question of the reasonableness of the settlement and the evidence supports the jury finding that the settlement was reasonable and (2) Mississippi law does not void the 1979 indemnification agreement. We conclude, however, that the district court erred by holding that Paper was required to indemnify Railroad as a matter of law; factual findings must be made by the jury before this determination can be made.

## IV.

Miss.Code Ann. § 31–5–41 provides:

> With respect to all . . . private contracts or agreements, for the construction, alteration, repair, or maintenance of buildings, structures . . ., or other work dealing with construction, . . . every covenant, promise, and/or agreement contained therein to indemnify or hold harmless another person for that person's own negligence is void as against public policy and wholly unenforceable.

In the 1979 Agreement, Paper undertook to indemnify Railroad for any loss caused by Railroad's "own negligence." Paper argues that Miss.Code Ann. § 31–5–41 voids its 1979 Agreement.

We have found no Mississippi state court cases interpreting § 31–5–41, and the parties have brought none to our attention. This Court, however, has discussed the statute on four prior occasions, and we now hold that it does not void the 1979 Agreement between Paper and Railroad.

We first applied § 31–5–41 in *Crosby v. General Tire & Rubber Co.*, 543 F.2d 1128 (5th Cir.1976). In that case, Vulcan contracted to paint part of a General Tire plant and indemnified General Tire for any loss, even loss caused by General Tire's negligence. *Id.* at 1129–30. Crosby worked for Vulcan and was injured on the job because of General Tire's negligence. *Id.* We held that § 31–5–41 voided Vulcan's agreement to indemnify General. *Id.* at 1130. *See also Ramsey v. Georgia Pacific Corp.*, 597 F.2d 890 (5th Cir.1979) (voiding clause indemnifying construction contractor for its own negligence).

In *City of Jackson v. Filtrol Corp.*, 624 F.2d 1384, 1389 (5th Cir.1980), we upheld an indemnification agreement in favor of Filtrol. Filtrol granted the City an easement to build a sewer line across its property. *Id.* at 1386. In the easement agreement, the City indemnified Filtrol for all loss "caused by the location, construction, operation, and maintenance" of the sewer. *Id.* at 1387. During construction, the City discovered that polluted soil and ground water on Filtrol's property might damage the sewer line, and the City had to coat the line to prevent corrosion. *Id.* We held that the City could not recover the cost of coating from Filtrol. *Id.* The indemnification agreement was valid because it was contained in the easement agreement, not in a "construction" contract. *Id.* Unlike the indemnitees in *Crosby* or *Ramsey*, Filtrol had not contracted to build anything for its indemnitor.

Most recently, we upheld an indemnity agreement in *Lorenzen v. South Central Bell Telephone Co.*, 546 F.Supp. 694 (S.D. Miss.1982), *aff'd*, 701 F.2d 408 (5th Cir. 1983). Clearview, a cable television company, attached its cable to South Central's telephone poles and indemnified South Cen-

tral for loss from the "erection, maintenance, presence, use, or removal" of the cables, even losses caused by South Central's own negligence. *Id.* at 695. Lorenzen, a Clearview employee, was hurt when a telephone pole collapsed. *Id.* at 696. Lorenzen recovered from South Central, and we upheld South Central's right to indemnity, stating: "Here we have no construction contract, and Clearview has not made an agreement to construct anything." *Id.* at 697. The underlying agreement containing the indemnity provision covered Clearview's right to use South Central's poles, not construction by Clearview. *Id.*

■ In the case before us, Railroad did not undertake to construct or do anything for Paper regarding the chip pit. Under the 1979 Supplemental Agreement, Paper was solely responsible for maintaining the chip pit. Section 31–5–41 therefore does not void Paper's agreement to indemnify Railroad.

## V.

The district court directed a verdict in favor of the Railroad and against Paper on Railroad's indemnity claim. The court reasoned that "since the supplemental agreement covers any injury to Railroad employees, among others, at the chip pit, improperly working rolling stock could be the basis for liability to the railroad under the FELA and if the railroad is liable under the FELA to Mr. Newsome, then International Paper is liable for the indemnity thereof, *if the accident happened at the chip pit.*" (emphasis added).

■ We are persuaded that the district court's interpretation of the coverage of the 1979 agreement is too broad. The agreement contemplates some causal connection between the use of the chip pit and Newsome's injuries. More is required than simple presence on the chip pit when an injury occurs. See *Lanasse v. Travelers Insurance Co.*, 450 F.2d 580, 583 (5th Cir. 1971); *Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1387–88 (5th Cir.1986).

If the factfinder finds that a connection exists then the indemnity agreement is triggered; but if no such connection is found, the indemnity agreement does not spring into operation and cannot be a predicate for Railroad's recovery of indemnity from Paper.

The jury must determine whether the accident was causally related to the existence and use of the chip pit. Newsome testified that he slipped at the chip pit. Although no one else saw him fall, Norwood testified that Newsome told him about the accident within thirty minutes. Dr. Rowlett's letter states that Newsome hurt himself "when he was getting off a boxcar [and] stepped on some chips." Hudson testified that "boxcars" are not used at the pit and that the chip walkway offers secure footing. Superintendent Nelson testified that no one had been hurt at the pit before Newsome. In addition, Newsome testified that he slipped on twelve inches of chips, and Hudson testified that the chips at most reached only six inches.

If the jury determines that Newsome slipped at the chip pit and that this contributed in any way to his injury, then the 1979 indemnity agreement will be triggered and Railroad can recover from Paper. We remand this case for a trial on this issue.

### VI. Reasonableness of Railroad's Settlement

■ If Newsome was hurt at the chip pit while removing an empty hopper, and the chip pit was causally related to the accident, then Paper must indemnify Railroad if its settlement was "reasonable." The jury found that $125,000 reasonably compensated Newsome for his injury. In support of the settlement amount, Nat Hovious testified that Railroad relied on Newsome's wages, benefits, and work life expectancy. Dr. Rowlett's letter stated that the injury permanently prevented Newsome from working as a brakeman or switchman. This evidence is ample to support the jury's finding that the sum paid in settlement was a reasonable one. Fed.R. Civ.P. 52.

■ In determining whether the settlement was reasonable, Paper argues that the district court should have permitted the

jury to consider the likelihood that Newsome would have prevailed against Railroad in his FELA action. Given the testimony of Newsome that he slipped on the chip pit while manually uncoupling cars, we are persuaded that the district court was entitled to find as a matter of law that Railroad had potential liability to Newsome and was reasonable in negotiating a settlement with him.[3] *Burlington Northern, Inc. v. Hughes Brothers, Inc.*, 671 F.2d 279, 282–83 (8th Cir.1982); *see also Wisconsin Barge Line, Inc. v. Barge Chem*, 546 F.2d 1125, 1129–30 (5th Cir.1977).

## VII. Conclusion

We agree with the district court that Mississippi law does not invalidate the 1979 agreement. We also agree with the manner in which the district court submitted the reasonableness of the settlement to the jury; the evidence amply supports the jury's finding that it was reasonable. We conclude, however, that the district court erred in determining as a matter of law that the 1979 indemnity agreement was triggered simply because Newsome was at the chip pit at the time of his injury. We therefore vacate the judgment and remand this case for partial new trial in accordance with this opinion.

AFFIRMED in part, VACATED in part and REMANDED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

I respectfully dissent because I believe that the indemnity agreement did not cover Railroad's violation of the Safety Appliance Act (SAA) 45 U.S.C. § 2.

As the majority opinion sets out, Paper agreed to indemnify Railroad for "liability ... which the railroad may incur ... arising out of or in any way attributable to ... the construction, maintenance, existence, use, operation or removal of said chip pit ... regardless of any negligence of Rail-

road." Railroad paid Newsome $125,000. The question is: *Why was Railroad liable to Newsome?*

In its appellate brief, Railroad concedes that "the coupling failed to make" and that Newsome was hurt while trying to couple the cars manually. Thus, Railroad admits that it violated the SAA. Once the automatic coupler failed, Railroad became absolutely liable to Newsome for any injury he might suffer while trying to couple the cars manually. Not even contributory negligence on Newsome's part could reduce the amount of damages. *See Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); 45 U.S.C. § 53. Nor could Paper's responsibilities as to the chip pit in any way alter Railroad's liability. As the Supreme Court stated in *Rogers*, if the SAA violation played "any part, even the slightest, in producing [Newsome's] injury, it does not matter that, from the evidence, the jury may also ... attribute the [injury] to other causes." 352 U.S. at 506, 77 S.Ct. at 448; *see also Crane v. Cedar Rapids & Iowa City Railway Co.*, 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969) ("injured employee [must] prove only the [SAA] violation and thus is relieved of the burden of proving negligence"); *Carter v. Atlanta & St. Andrews Bay Railway Co.*, 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed.2d 236 (1949); *O'Donnell v. Elgin, Joliet & Eastern Railway Co.*, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949). In other words, Railroad's liability to Newsome arose solely from the SAA violation as a matter of causation defined by statute and not from the use or maintenance of or in connection with the chip pit. It is well established that SAA violations compel the abandonment of all the usual rules concerning causation and negligence of which lawyers and judges are so fond.

The majority properly recognizes that "simple presence on the chip pit when an injury occurs" is not enough to trigger

---

**3.** It is undisputed that before settlement, Railroad notified Paper of the accident and tendered defense of the claim to Paper under the sidetrack agreements. Paper rejected the claim and the demand for indemnification. Because Railroad tendered defense of the claim to Paper, Railroad only had to prove potential liability under FELA, not actual liability. *Burlington Northern, Inc. v. Hughes Brothers, Inc.*, 671 F.2d at 283; *Wisconsin Barge Line, Inc. v. Barge Chem*, 546 F.2d at 1129–30.

indemnification. But it remands for the district court to decide "whether the accident was *causally related* to the existence and use of the chip pit." For me, this inquiry is irrelevant. The SAA violation in its terms begins and ends the inquiry into cause as far as the railroad is concerned. The cause and the liability are absolute under the SAA. There is no authority under the SAA to inquire into "other causes" once the causation resulting from the defective coupling was established. *Rogers*, 352 U.S. at 506, 77 S.Ct. at 448.

The case before us is unlike one in which a railroad's Federal Employers Liability Act (FELA) liability would be based upon a negligent failure to provide a safe workplace. 45 U.S.C. § 51 *et seq.* Assume that instead of violating the SAA, Railroad negligently had assigned Newsome to open the hopper doors in an unsafe situation and he slipped on chips while doing so. Railroad would be liable to Newsome for its negligent failure to provide a safe workplace, but it could recover indemnity from Paper under the 1979 Agreement, absent the barring of such recovery under Mississippi law. Newsome's injury and Railroad's liability would arise in part out of the use of the pit. The role the pit played in causation would be a proper inquiry. *See Linden v. Chicago, Burlington and Quincy Railroad*, 483 F.2d 29 (8th Cir.1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 917, 39 L.Ed.2d 111 (1974). In *Linden*, a railroad employee was hurt at a chip pit while closing a hopper door when the hopper car was hit by another railroad car. The employee obviously was injured by railroad negligence in connection with the use of the pit. *See also Steed v. Central of Georgia Railway Co.*, 529 F.2d 833 (5th Cir.) (Railroad could recover indemnity from Riegel for FELA payments made to employee hurt at Riegel's unsafe plant), *cert. denied*, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976).

In the case before us, however, the use of the pit cannot, under the SAA, contribute to or detract from Railroad's liability at all, even assuming it did in fact contribute to Newsome's injury. Regardless of why Newsome fell, and whether or not the oper-ation of the pit had anything to do with it, the sole cause of the injury, by the terms of the SAA, was the failure of the automatic coupling.

The crux of this case is the fact that the $125,000 settlement paid by the Railroad was an absolute liability for having a defective coupling in violation of the SAA. Under the SAA, the pit could not have any causal relationship with the coupling or the liability. I would hold that the district court erred in awarding indemnification because Newsome's injury is not and cannot be legally related to the chip pit. In so holding, there is no need to consider the Mississippi statute limiting indemnification for negligence in the construction industry (Miss.Code Ann. § 31–5–41) or the reasonableness of the settlement between Newsome and Railroad.