923 So.2d 266 (2006)
EAGLE PACIFIC INSURANCE COMPANY, Appellant
v.
Jesus QUINTANILLA, LeTourneau, Inc., and Rowan Companies, Appellees.
No. 2004-CA-02516-COA.
Court of Appeals of Mississippi.
March 14, 2006.
*267 Clyde Emil Ellis, Vicksburg, Patrick Hannon Patrick, attorneys for appellant.
James W. Nobles, Wes W. Peters, Jackson, Jackson, W. Richard Johnson, attorneys for appellees.
Before MYERS, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. Eagle Pacific Insurance Company ("Eagle Pacific") appeals the judgment of the Circuit Court of Warren County denying Eagle Pacific's motion to intervene in a lawsuit filed by Jesus Quintanilla against LeTourneau, Inc. and other defendants. The trial court denied Eagle Pacific's motion to intervene because of an indemnity clause in a contract between LeTourneau and Quintanilla's employer, Premier Industries, Inc. ("Premier"), which is Eagle Pacific's insured. Eagle Pacific argues on appeal, as it did at the trial court level, that this indemnity clause is voided by the provisions of Mississippi Code Annotated section 31-5-41. We find that the trial court did not err in denying Eagle Pacific's motion to intervene.

FACTS AND PROCEDURAL HISTORY
¶ 2. LeTourneau constructs offshore oil rigs in a facility located in Vicksburg, Mississippi. On or about January 25, 1999, LeTourneau was engaged in the construction of the oil rig "Gorilla VI." Because LeTourneau did not employ the necessary number of welders to complete the project, it contracted with Premier to provide welders to work on the project. As part of the agreement between LeTourneau and Premier, Premier agreed that LeTourneau would be named as an additional insured under its workers' compensation policy; that Premier would provide all applicable workers' compensation insurance for its employees; and that Premier would waive any and all subrogation rights against LeTourneau.[1] Pursuant to the purchase order, *268 Premier supplied contract welders to LeTourneau to work on the Gorilla VI rig. Jesus Quintanilla was one of the welders supplied to LeTourneau pursuant to the purchase order.
¶ 3. Quintanilla filed a complaint on June 14, 2002, against LeTourneau and Rowan Drilling Company, Inc., in the Circuit Court of Warren County alleging that, on July 2, 1999, he sustained injuries to his hand while assisting LeTourneau employees in repositioning a steel rack which held five-gallon water bottles, and that LeTourneau's and Rowan's negligence proximately caused his injuries. Quintanilla had previously been paid Longshore and Harbor Workers' Compensation Act benefits for his injury through his employer's insurer, Eagle Pacific. On September 3, 2004, Eagle Pacific filed a motion to intervene in Quintanilla's action against LeTourneau, claiming that it was entitled to subrogation of compensation benefits in the amount of $12,085.65 and medical benefits in the amount of $15,058.06 which had been paid to Quintanilla. In its memorandum brief in support of its motion, Eagle Pacific argued that Mississippi Code Annotated section 31-5-41 (Rev.2005) operated to void the indemnity agreement between LeTourneau and Premier.[2] Both LeTourneau and Quintanilla opposed the motion.[3]
¶ 4. The trial court denied Eagle Pacific's motion to intervene, finding that "the clear language of the [contract] applies to Eagle's action." As to whether section 31-5-41 applied, the court noted that the section applied to "all contracts for construction, alteration, repair or maintenance of buildings and structures, or other work dealing with construction." Continuing, the court stated:
The contract between Premier and LeTourneau, Inc., was for supplying laborers, more specifically welders, at the shipyard in Warren County. Whether this contract is a construction contract under the statute is the key to this motion. If this is a construction contract, the indemnity/hold harmless clause is void, and Eagle can intervene. If this contract is not a contruction contract, the indemnity/hold harmless clause applies, and Eagle has no right to intervene.
The Courts have placed a restrictive, not liberal, construction on what is a construction contract under Miss.Code Ann. § 31-5-41 ... the Court finds that the subject contract was not a construction contract so as to place it under Miss.Code Ann. § 31-5-41, but was merely a labor contract to provide welders.
*269 Based on this reasoning, the court found that "the indemnity/hold harmless clause in the contract is valid" and barred Eagle Pacific from intervening in the action. Aggrieved, Eagle Pacific appealed, asserting that the trial court erred in its interpretation of the application of section 31-5-41 because, according to Eagle Pacific, the contract in question is for "other work dealing with construction." We find that the trial court did not err in its interpretation of the application of section 31-5-41. The contract in question here is merely to supply contract laborers, it is not a contract for any sort of "work." Thus, the contract does not fall within the ambit of section 31-5-41.

STANDARD OF REVIEW
¶ 5. "We conduct a de novo review for determinations of legal questions." Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002).

ISSUE AND ANALYSIS
¶ 6. Mississippi Code Annotated Section 31-5-41 provides:
With respect to all public or private contracts or agreements, for the construction, alteration, repair or maintenance of buildings, structures, highway bridges, viaducts, water, sewer or gas distribution systems, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise and/or agreement contained therein to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.
On appeal, Eagle Pacific argues "under a plain reading of [s]ection 31-5-41, the statute applies to a contract under which welders are supplied for construction work on a vessel." This is so, Eagle Pacific argues, because "it is not required under [s]ection 31-5-41 that the contract at issue expressly state that it is a `construction contract' nor that one of the parties has to `construct' something for the other." Thus, even though "the LeTourneau/Premier contract is not for the construction of the Gorilla VI itself, the contract is for `other work dealing with construction' on that vessel and therefore within the scope of Section 31-5-41." Accordingly, the main thrust of Eagle Pacific's argument is that the contact in question falls within the category of "other work dealing with construction."
¶ 7. "If a statute is not ambiguous, the court should apply the plain meaning of the statute." Sykes v. State, 757 So.2d 997, 1000(¶ 8) (Miss.2000). This Court will not resort to canons of statutory construction when the statute in question is clear and unambiguous. State v. Heard, 246 Miss. 774, 781, 151 So.2d 417, 420 (1963). Under a plain reading of the statute, we disagree with Eagle Pacific's analysis.
¶ 8. Section 31-5-41 provides that it applies to contracts "for the construction ... of buildings, structures ... or other work dealing with construction...." Clearly, this means that the statute applies to contracts "for ... work," whether that work is "construction," or "other work dealing with construction." The contract in question in the instant case was not a contract for work. Rather, as correctly stated by the trial court, it was merely a contract to supply laborers. Premier took no part in the work performed by Letourneau. Rather, it provided welders at a contract rate who were to "work as directed" by LeTourneau on the Gorilla VI rig.
¶ 9. Eagle Pacific argues that the instant case is analogous to several other cases from our court and the federal courts in which section 31-5-41 was found to invalidate *270 indemnity contracts. However, we find that the cases cited are distinguishable from the instant case, and in fact serve to reinforce the correctness of the trial court's decision. Eagle Pacific places great reliance on this Court's holding that section 31-5-41 voided an indemnity contract in the unreported case Accu-Fab & Construction, Inc. v. Ladner, No. 96-CA-00692 COA, ___ So.2d ___ 2000 WL 274291 (Miss.Ct.App. Mar.14, 2000). However, Accu-Fab involved a contract between a general and a subcontractor where the subcontractor had been hired to perform metal fabrication work. Id. at (¶ 3).[4] In Crosby v. General Tire & Rubber Co., 543 F.2d 1128 (5th Cir.1976), also relied upon by Eagle Pacific, "work was being done pursuant to a contract between General Tire and Vulcan Painters, Inc." Id. at 1129. In Certain London Market Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 269 F.Supp.2d 722 (N.D.Miss.2003), the contract voided by section 31-5-41 was for "certain rubber lining and fiberglass work" to be performed by one of the contracting parties. Id. at 723.
¶ 10. Each of these cases involved a contract for construction or work relating to construction to be performed directly by one of the parties to the contract. In none of the cases was the contract comparable to the contract in the instant case, where one of the contracting parties, Premier, takes no action in the actual construction or construction-related work involved.
¶ 11. The appellees cite as analogous four cases in which section 31-5-41 was found not to void indemnity agreements. In Illinois Central Gulf Railroad Co. v. International Paper Co., 824 F.2d 403 (5th Cir.1987), the United States Court of Appeals for the Fifth Circuit found valid an indemnity agreement where one of the contracting parties "did not undertake to construct or do anything for" the other contracting party in regards to a "chip pit" where the underlying injury occurred. Id. at 407. In Lorenzen v. South Central Bell, 546 F.Supp. 694 (S.D.Miss.1982), an indemnity clause within a licensing agreement was upheld, where the purpose of the licensing agreement was merely to permit a cable company to maintain cables on telephone poles owned by the other contracting party. Id. at 695. A similar set of facts to Lorenzen was present in Heritage Cablevision v. New Albany Elec. Power Sys., 646 So.2d 1305 (Miss.1994), where the Mississippi Supreme Court found an indemnity clause valid because the contract in question was "a licensing agreement and not a construction contract." Id. at 1312. Finally, in City of Jackson v. Filtrol Corp., 624 F.2d 1384 (5th Cir.1980), the Fifth Circuit upheld an indemnity clause because it was found within an easement, not a construction contract. Id. at 1389.[5]
*271 ¶ 12. Eagle Pacific correctly notes that none of these cases upholding indemnity agreements "involved one party contracting with another party to perform work in a construction project ... none of these cases involved `other work dealing with construction.'" Therefore, Eagle Pacific states that "[e]ach of these cases in actuality stands ... for the proposition that a contract must at least involve work to effect or assist in the construction or alteration or maintenance of a building or structure to be within the statute's reach." We find this to be a succinct statement of the law, and for this reason we find that the contract in question in the instant case falls outside of the reach of section 31-5-41. LeTourneau did not contract with Premier for Premier to perform construction work or other work dealing with construction. Premier performed no work at all pursuant to the contract, it merely provided contract welders to work at the direction of LeTourneau. Accordingly, we affirm the decision of the trial court finding that the contract in question is not invalidated by section 31-5-41 and denying Eagle Pacific's motion to intervene.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] The contract between LeTourneau and Premier was in the form of a purchase order. The relevant section of the contract states:

4. SELLER WILL INDEMNIFY AND HOLD HARMLESS BUYER ... FROM AND AGAINST ALL LIABILITY FOR LOSS, DAMAGE, DEATH OR INJURY TO ANY PERSON OR PROPERTY IN ANY MANNER ARISING OUT OF THE PERFORMANCE HEREOF OR USE OF SELLER'S PRODUCT OR SERVICES (REGARDLESS OF NEGLIGENCE OR OTHER FAULT OF BUYER OR ITS OFFICERS OR EMPLOYEES), INCLUDING WITHOUT LIMITATION ALL CLAIMS AND DEMANDS MADE AGAINST BUYER UNDER ANY APPLICABLE WORKMAN'S COMPENSATION LAWS OR LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT, AND SELLER SHALL FURNISH BUYER WITH PROPER EVIDENCE THAT SELLER IS INSURED AGAINST ALL LIABILITY UNDER SUCH LAWS.... The term "Buyer" used throughout paragraph[] 4 ... shall mean LeTourneau, Inc.... and seller shall provide to Buyer a certificate of insurance naming Buyer as additional insured on seller's insurance policy.
[2] Eagle Pacific made additional arguments in support of its position, however, on appeal it contests only the issue of whether section 31-5-41 applies to the contract in question.
[3] It does not appear that Quintanilla filed a brief in opposition to Eagle Pacific's motion at the trial court level. However, counsel for Quintanilla was present at the hearing on the motion, and it appears from a transcript of the hearing that counsel contested Eagle Pacific's intervention on the ground of laches. Quintanilla does not raise the doctrine of laches on appeal, rather, he raises the entirely new argument that section 31-5-41 does not apply because Texas law governs the disposition of this action. Because the record does not reflect that Quintanilla ever presented this argument to the trial court, we decline to review it on appeal.
[4] The Mississippi Supreme Court granted certiorari in Accu-Fab and issued a new opinion which does not address section 31-5-41. See Accu-Fab & Construction, Inc. v. Ladner, 778 So.2d 766 (Miss.2001). Consequently, the Court of Appeals opinion cited by Eagle Pacific has been withdrawn and thus has no precedential value.
[5] In its reply brief, Eagle Pacific cites Filtrol for the proposition that because one of the parties to the instant contract, LeTourneau, was performing construction, then the contract it made with Premier was "for work dealing with that construction." This argument requires an overly broad reading of section 31-5-41, and would cause almost any contract made by a party performing construction to be placed within the reach of the statute. Certainly this was not the holding of the Filtrol court, which found that section 31-5-41 was not applicable because "[t]he easement is not a contract in which one party agreed to construct a sewer." Filtrol, 624 F.2d at 1389.