**ILLINOIS CENTRAL GULF RAILROAD COMPANY, Plaintiff–Appellant Cross–Appellee,**

v.

**INTERNATIONAL PAPER COMPANY, Defendant–Appellee Cross–Appellant.**

No. 88–4520.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1989.

Burkett H. Martin, Vicksburg, Miss., James P. Coleman, Ackerman, Miss., for plaintiff-appellant cross-appellee.

Louis G. Baine, Jr., Louis G. Baine, III, Jackson, Miss., Don W. Moore, Kirk G.

Forrest, Purchase, N.Y., for defendant-appellee cross-appellant.

Before KING, GARWOOD and DAVIS, Circuit Judges.

PER CURIAM:

This action arises from plaintiff-appellant Illinois Central Gulf Railroad Company's contractual indemnification claim against defendant-appellee International Paper Company, in which the Railroad seeks to recoup payments made to an injured Railroad employee. The Railroad appeals an adverse jury verdict that exonerated International Paper Company from liability under the contractual indemnity clause. We affirm the final judgment of the district court.

## I.

■■■ This case comes before our court for a second time. The factual background of the indemnification claim by Illinois Central Gulf Railroad Company ("Railroad") is adequately set forth in our prior opinion. *Illinois Central Gulf R.R. Co. v. International Paper Co.*, 824 F.2d 403 (5th Cir. 1987) (hereinafter *"Illinois Cent. Gulf I"*). Briefly, this lawsuit arises from a knee injury that H.L. "Lacy" Newsome ("Newsome"), an employee of the Railroad, sustained, allegedly on August 3, 1982, while manually uncoupling hopper cars in the "chip pit" facility of a mill owned and operated by International Paper Company ("IPC") near Redwood, Mississippi. Newsome sued the Railroad under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60.[1] Railroad tendered defense of Newsome's claim to IPC under the indemnity agreements entered into by the parties. IPC rejected the claim and the

---

1. FELA requires a railroad to provide its employees a safe place to work even if they are performing their work on the premises of another. *Illinois Central Gulf R.R. Co. v. International Paper Co.*, 824 F.2d 403, 404–05 (5th Cir. 1987). In addition, the Safety Appliance Act ("SAA"), 45 U.S.C. § 2, requires that railroad cars couple automatically. A railroad is strictly liable under FELA for injury caused by a violation of the SAA. *Id.* at 405.

demand for indemnification. Railroad settled Newsome's claim for $125,000 plus medical expenses and filed a lawsuit in July 1983 against IPC for indemnification.

At the first trial on the indemnification claim, the district court ruled at the close of the evidence that a 1979 written contract entered into by Railroad and IPC applied to Newsome's injury. Under this contract, referred to as a "Sidetrack Agreement" in the industry, IPC undertook to indemnify Railroad for personal injury liability "arising out of or in any way attributable to … the construction, maintenance, existence, use, operation or removal" of a "chip pit" facility [2] at the IPC plant "regardless of any negligence of Railroad Company." Having determined as a matter of law that the indemnification agreement covered Newsome's injury and that Railroad was potentially liable to Newsome under FELA, the court submitted to the jury only the issue of whether the railroad's settlement with Newsome was reasonable. The jury found that $125,000 constituted reasonable compensation for Newsome's knee injury.

In our prior opinion, we upheld the validity under Mississippi law of the parties' 1979 indemnification agreement. *Id.* at 406–07. We also affirmed that part of the district court's judgment that concluded that Railroad had proved both its potential FELA liability to Newsome and the reasonableness of its negotiated settlement of Newsome's FELA claim against Railroad. *Id.* at 407–08.

We reversed, however, the district court's conclusion that the parties' 1979 Sidetrack Agreement required IPC to indemnify Railroad as a matter of law in this situation. We held that the court had interpreted the scope of the indemnity clause too broadly. Only if a causal connection existed between the injuries of Newsome and the use of the chip pit would the indemnity agreement be operative. Reviewing the trial transcript, we found conflicting evidence as to whether Newsome's injury occurred at the chip pit at all and, if so, whether the chip pit was a contributing cause of the knee injury that forced Newsome into an early retirement. Determining that this unresolved factual issue precluded a directed verdict, we remanded solely for a jury's determination of whether "Newsome slipped at the chip pit" and whether "this contributed in any way to his injury." *Id.* at 407.

With one exception,[3] the evidence presented at the second trial was substantially the same as that of the first trial. The district court submitted two questions to the jury:

1. Do you find that Illinois Central Gulf has proven to you by a preponderance of the credible evidence that H.L. "Lacy" Newsome sustained an injury to his knee at the International Paper chip pit on August 3, 1982?

Yes____

No____

---

**2.** As explained in our prior opinion, the "chip pit" at IPC's mill facilitates the unloading of wood chips that will be processed at the mill. Hopper cars, which resemble boxcars with doors on the bottom, are positioned over the pit. An IPC employee opens the bottom doors and places a mechanical vibrating device atop the hopper car, which shakes the wood chips into the pit below. As a natural and unavoidable consequence of the process of emptying the hopper cars, wood chips are spilled on the walkway that runs between the railroad car tracks and the chip pit.

**3.** In the first trial, the district court admitted into evidence a letter from Dr. Samuel Rowlett to the United States Railroad Retirement Board (Exhibit P-6). Dr. Rowlett wrote in this letter that he had treated Newsome for an initial knee

injury in 1979 and that Newsome had reinjured his knee on August 3, 1982, "when he was getting off of a boxcar at International Paper Company." Testimony at trial revealed that box cars did not enter the chip pit tracks; only hopper cars were found at this location. Defendant IPC attempted to introduce this same exhibit at the second trial in order to discredit Newsome's testimony that he was injured at the chip pit location. Railroad objected to this exhibit at the second trial on hearsay grounds. The district court sustained the objection and excluded the evidence. On cross-appeal, IPC argues that the district court in the second trial abused its discretion by excluding Dr. Rowlett's letter. Because of our disposition of this appeal in favor of IPC, we need not reach this issue.

(If your answer to Interrogatory No. 1 is "No" do not answer the remaining question.)

2. If your answer to Interrogatory No. 1 is "Yes", state whether you find that Illinois Central Gulf has proven to you by a preponderance of the credible evidence that the injury to H.L. "Lacy" Newsome was causally connected to the existence and use of the chip pit.

Yes——

No——

The jury answered "No" to the first interrogatory, and the district court entered a take-nothing judgment in favor of IPC.

Railroad argues on appeal that because it established in the first trial (*Illinois Cent. Gulf I*) both its potential liability to Newsome under FELA and the reasonableness of its settlement of Newsome's claim, it was consequently entitled to indemnity from IPC as a matter of law. Essentially, Railroad contends that in the first appeal of this action, the Fifth Circuit panel erred by remanding the case to the trial court for further factfinding. Railroad also argues that the jury's verdict in the second trial was not supported by sufficient evidence. Finally, Railroad contends that the jury instruction accompanying Special Interrogatory No. 2 was erroneous.

## II.

### A. *Law of the Case Doctrine*

In *Illinois Cent. Gulf I,* we reversed the district court's directed verdict at the first trial on the issue of whether the 1979 Sidetrack Agreement required IPC to indemnify Railroad for Newsome's injury. We held in our prior opinion that, although the record supported the district court's conclusions that Railroad had potential liability to Newsome and was reasonable in negotiating a settlement with him, a jury was need-

ed to determine the threshold issue of whether Newsome's injury was encompassed in the scope of the parties' indemnification agreement. *Id.* at 407. Railroad now argues that our holding "required that ICG [Railroad] prove its *actual* liability to Newsome ..." and mandated a "plenary trial of the underlying FELA issue." Maintaining that the indemnity agreement was triggered merely by proving *potential* FELA liability and a reasonable settlement, Railroad argues that it established its indemnity claim against IPC as a matter of law at the first trial and that our prior panel failed to "follow the law" by remanding the case for further factfinding on the indemnity issue.

■ Under the "law of the case" doctrine, an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal. *Todd Shipyards Corp. v. Auto Transportation,* 763 F.2d 745, 750 (5th Cir.1985). This doctrine serves the practical goals of encouraging finality of litigation and discouraging "panel shopping."[4] Railroad nevertheless requests that we find that an exception to the law of the case doctrine exists. Finding no merit in Railroad's arguments, we will not disturb the holdings of our prior decision.

■ The law of the case doctrine, although well established, is not inviolable. The decision of an appellate court must be followed in all subsequent proceedings in the same case unless: (1) the evidence in a subsequent trial is substantially different; (2) the prior decision was "clearly erroneous and would work manifest injustice"; or (3) controlling authority has in the interim made a contrary decision of law applicable to the disputed issue. *Falcon v. General Telephone Co.,* 815 F.2d 317, 320 (5th Cir. 1987). Railroad admits that the facts de-

---

4. As explained in a prior en banc decision:

We think that in a multi-Judge Court it is most essential that it acquire an institutional stability by which the immediate litigants of any given case, and equally important, the bar who must advise clients or litigants in situations yet to come, will know that in the absence of most compelling circumstances, the

decision on identical questions, once made, will not be re-examined and redecided merely because of a change in the composition of the Court or of the new panel hearing the case. *Lincoln National Life Ins. Co. v. Roosth,* 306 F.2d 110, 114 (5th Cir.1962) (en banc), *cert. denied,* 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963).

veloped in the second trial were substantially the same as in the first trial.[5] Likewise, Railroad does not make a viable argument that controlling law has intervened that contradicts our first opinion.[6] Thus, the lion's share of Railroad's brief on appeal is devoted to an attempt to persuade us that our prior opinion was clearly erroneous, irreconcilable with established authority, and internally inconsistent. Although Railroad provides an exhaustive litany of case law on the subject of indemnity contracts, its discussion is largely irrelevant, as it fails to accurately address the holding of our previous decision. Railroad thus urges us to reconsider a mandate that we never held to be the law of this case.

As we explained in our first opinion in this case, in order to succeed in its indemnity claim, Railroad was required to establish potential liability under FELA and good faith settlement in a reasonable amount.[7] *Illinois Cent. Gulf I,* 824 F.2d at 407–08 and n. 3; *see also Illinois Central Gulf R.R. Co. v. Crown Zellerbach Corp.,* 859 F.2d 386, 389 (5th Cir.1988). We upheld the district court's judgment that Railroad had met its burden as to these two elements. Railroad ignores the fact, however, that it bore an additional element of proof

in this case. IPC disputed, and thus Railroad needed to show, that the parties' indemnity agreement covered Railroad's liability for Newsome's injury. As stated in *Southern Railway Co. v. Georgia Kraft Co.:*

> For many years, the majority rule was that an indemnitee, such as Southern Railway, must show actual liability to an injured person before it could recover against an indemnitor, in this case Georgia Kraft. The rule gradually changed, however, so that an indemnitee, after giving the indemnitor notice and an opportunity to defend, could settle a lawsuit and claim indemnity upon a showing that the decision to settle was reasonable.
>
> In the instant case, Southern Railway notified Georgia Kraft of the lawsuit and gave that company an opportunity to defend, but Georgia Kraft refused. At trial, therefore, Southern Railway was not required to prove that it actually would have been liable to Johnson, only that it was potentially liable and settled the lawsuit in good faith.
>
> The fact that an indemnitee was potentially liable to an injured party is a neces-

---

**5.** One difference exists in the evidence that was admitted in the second trial, as discussed in note 3 and section B of this opinion. However, the exclusion of this documentary evidence, although relevant to our discussion on the standard of review for sufficiency of the evidence, does not affect the very different question of whether we are empowered to "overrule" our prior panel's remand of this case.

**6.** In its reply brief, and more prominently in oral arguments, Railroad contends that our prior decision in this case is inconsistent with a subsequent Fifth Circuit opinion, *Illinois Central Gulf R.R. Co. v. Crown Zellerbach Corp.,* 859 F.2d 386 (5th Cir.1988). There is no inconsistency. In *Crown Zellerbach,* we followed an Eighth Circuit case in holding that a party seeking indemnity for liability incurred in settling a FELA claim must show that its settlement was reasonable and in good faith, if the indemnitor was notified and declined to defend the case. *Id.* at 389 (citing *Burlington Northern, Inc. v. Hughes Bros., Inc.,* 671 F.2d 279, 282 (8th Cir. 1982)). We held that the legal standard for evaluating "good faith settlement" is whether the indemnitee establishes its *potential* liability under FELA. We rejected the appellant's argument that a finding of *probable* liability is needed to support a claim for indemnification where

the indemnitee, after notice to the indemnitor, settles the underlying claim. Citing our earlier opinion in *Illinois Cent. Gulf I,* we noted in *Crown Zellerbach* that this reading of the *Burlington* case had already been applied in the Fifth Circuit. *Crown Zellerbach,* 859 F.2d at 386; *see Illinois Cent. Gulf I,* 824 F.2d at 408 n. 3. Railroad concedes that we stated the proper standard in *Illinois Cent. Gulf I,* a standard that was followed in *Crown Zellerbach.* Thus, the "intervening case" exception to the law of the case doctrine cannot apply. Railroad's argument centers instead on its contention that, although we stated the proper legal standard, we erroneously applied it by remanding for further factfinding on "actual liability" under FELA. As explained herein, Railroad has mischaracterized our prior holding.

**7.** An indemnitee must also show that before settlement, it notified the indemnitor of the FELA claim and that the indemnitor declined to defend the lawsuit. *Illinois Cent. Gulf I,* 824 F.2d at 408 n. 3; *Crown Zellerbach,* 859 F.2d at 389. It is here undisputed that IPC rejected Railroad's tender of defense of Newsome's lawsuit.

sary condition for the indemnitor to be liable to the indemnitee. *Still, if the indemnitee reasonably settled with the injured party, but the injury is not covered by the indemnity agreement, then the indemnitor is not liable to the indemnitee.* Thus, the question of the coverage of the indemnity contract between Georgia Kraft and Southern Railway remains to be decided.

823 F.2d 478, 480–81 (11th Cir.1987) (citations omitted) (footnotes omitted) (emphasis added). Contrary to Railroad's assertions, we remanded this case for factfinding on an issue of contract interpretation—i.e., whether a causal connection existed between Newsome's injury and the use of the chip pit such that the claim was contemplated within the parties' 1979 agreement—not on the issue of FELA liability.

It is specious for Railroad to argue that the liability of IPC "automatically follows" the liability of Railroad to its employee Newsome. Newsome's duties as a flagman and brakeman for the Railroad carried him to locales beyond IPC's paper mill. For example, testimony indicates that he performed switching operations at "Ballground," a switching yard located approximately a mile from IPC's mill, accompanied full loads into the mill (of which the chip pit constitutes only one small area), and brought empty cars back to Vicksburg. IPC did not consent to indemnify Railroad for any liability that Railroad might incur to any of its employees. Under the 1979 Sidetrack Agreement, IPC agreed to indemnify Railroad only for liability connected to the existence or use of the chip pit. In our previous opinion, we interpreted this contract to require both situs (an injury occurring at the chip pit) and causation (that the use of the chip pit contributed in any way to the injury). We cannot conclude that our prior panel's interpretation was erroneous or manifestly unjust.

Because the trial record contained conflicting facts and inferences as to where and how Newsome's knee injury occurred, we properly reversed the district court's directed verdict on the issue of the intended scope of the parties' contract and remanded to resolve the conflict in the evidence. On remand, the two special interrogatories that the district court submitted to the jury related only to situs and causal connection, not to FELA liability. The jury resolved the factual dispute in favor of IPC. Thus, based on the determination that the indemnity agreement did not cover Railroad's liability to Newsome, the findings in the first trial on potential liability and reasonable settlement were rendered irrelevant.

## B. *Sufficiency of the Evidence*

Railroad next contends that the verdict of the jury in the second trial was "contrary to the overwhelming weight of the evidence." Our review of the record reveals, however, that Railroad failed to move for a directed verdict at trial. The rule in this circuit is that absent a motion for directed verdict, the sufficiency of the evidence supporting the jury's findings is not reviewable on appeal. *Shipman v. Central Gulf Lines, Inc.,* 709 F.2d 383, 385 (5th Cir.1983). Thus, the scope of our inquiry is restricted to "whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.' " *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir. 1978). Moreover, the fact that Railroad raised a sufficiency of the evidence issue in its motion for new trial does not correct its failure to move for a directed verdict. *Id.* Although we may review whether the trial court abused its discretion in denying Railroad's motion for new trial, the standard in this circumstance is whether there was an "absolute absence of evidence to support the jury's verdict." *Id.* at 298.

One might argue—although Railroad did not do so—that moving for a directed verdict would have been a futile gesture at the second trial considering the procedural posture of the case on remand. On the first appeal of this case, we found conflicts in the evidence regarding the location and cause of Newsome's injury that *precluded* a directed verdict. The district court was bound by this finding as the law of the

case, and conducted the second trial pursuant to our mandate that a factfinder's determination was required.

We need not decide, however, whether the procedural posture of this case in the second trial relieved Railroad of the need to move for a directed verdict. Our finding of conflicting evidence rested specifically in part on a piece of evidence that was introduced at the first trial: a letter written by Newsome's treating physician, which stated that Newsome explained to the doctor that he hurt himself "when he was getting off a boxcar." *Illinois Cent. Gulf I*, 824 F.2d at 407. Because testimony established that box cars do not enter the chip pit area, this letter was damaging to Newsome's testimony. In the second trial, IPC attempted to introduce this same letter, but Railroad objected on hearsay grounds. After an *in camera* debate regarding the admissibility of the doctor's letter, the district court sustained Railroad's objection, and the jury was not allowed to consider this evidence.

We believe that the district court's exclusion of this one item of evidence changed the evidentiary balance of the case to at least some degree. Certainly, the conflict as to the location of the accident did not weigh as heavily in favor of IPC at the close of the evidence in the second trial. Having carefully reviewed the trial transcript, and for the reasons discussed below, we think that Railroad's motion for directed verdict would have been unsuccessful. Nonetheless, under our circuit's procedural rules for preserving appellate review, "a party is not permitted to gamble on the verdict and later question the sufficiency of the evidence that led to his defeat." *Coughlin*, 571 F.2d at 297. We conclude that, at least after successfully having this impeachment evidence excluded, it was incumbent on Railroad to move for a directed verdict in order to preserve a sufficiency of the evidence argument on appeal. We review the jury's verdict, therefore, under the plain error standard outlined above.

Railroad contends that because Newsome testified that he slipped and injured his knee at the chip pit, and because Newsome was the only witness to this accident, "[h]is testimony is uncontradicted and undisputed and should be taken as true." We are not persuaded. A jury is entitled to reach reasonable inferences based on circumstantial, as well as direct, evidence. Based on the total circumstances surrounding the events at issue in this trial, the jury was free to disregard Newsome's unsupported testimony as improbable or inaccurate. Moreover, the jury heard testimony that, if believed, disputed Newsome's account of his injury.

Newsome testified that his job entailed switching operations at locations other than IPC's chip pit and that his injury occurred when he was manually coupling two cars that failed to automatically couple. Newsome and Nat Hovious, Railroad's claims agent, testified that three years prior to the alleged accident of August 3, 1982, Newsome had seriously injured the same knee that he claimed to have injured at the chip pit. Newsome also testified that, despite an injury sufficiently severe to require his retirement from the employ of the Railroad, he continued to work out his shift on the evening of the accident. Frank Norwood, Railroad's conductor of Newsome's crew, testified that Newsome did not report his accident at the time it occurred, although Norwood was standing nearby. Nor did Newsome report the injury to any IPC personnel until approximately two weeks after the event. Although IPC personnel and Frank Norwood were in a control booth within fifteen yards of the alleged site of Newsome's injury, where Newsome testified that he slipped and "almost went in that pit," no one saw anything unusual. Lloyd Nelson, the supervisor of the chip pit, James Womack, IPC's safety director, and two other IPC employees, testified that the wood chips on the walkway where Newsome claimed to have slipped were kept packed down by the foot traffic of IPC woodyard helpers, and that no other incidents of personnel slipping on wood chips on this walkway had ever been reported. Nelson also testified that there was "no need or reason" for a Railroad employee to be on the walkway next to the chip pit.

Railroad carried the burden of persuading the jury by a preponderance of the evidence that Newsome's injury occurred at IPC's chip pit. Under our strict guidelines for review in this case, we conclude that there was at least some evidence to support the jury's verdict.

## C. *Erroneous Jury Instruction*

■ Railroad finally argues that the jury instruction accompanying Special Interrogatory No. 2 was erroneous. The district court instructed the jury that

[c]ausal connection as used in this instruction means that the use or existence of the chip pit was a proximate cause of the injury to Mr. Newsome. Proximate cause as used in this instruction is that cause which in natural and continuous sequence produces the injury and without which the result would not have occurred.

Railroad's argument may have merit. In *Linden v. Chicago, Burlington & Quincy R.R.*, 483 F.2d 29, 33 (8th Cir.1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 917, 39 L.Ed.2d 111 (1974), the court construed the effect of an indemnity provision containing language almost identical to that used in the contract at issue in this case: "... in any manner arising out of the construction, maintenance, operation, use, existence, or removal of said unloading pit." The Eighth Circuit held that this language does not contemplate a showing of proximate cause, but only a causal connection between the unloading pit facility and the injury. *Id.; see also Missouri Pacific R.R. Co. v. Kansas Gas and Electric Co.*, 862 F.2d 796, 799 (10th Cir.1988) (same) (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir.1986)). In our previous opinion in this case, we indicated that Railroad needed to show on remand "some causal connection" and that the use of the chip pit "contributed in any way" to New-

some's injury. *Illinois Cent. Gulf I*, 824 F.2d at 407.

Although it appears that the district court may have misinterpreted our previous opinion by imposing a more onerous burden on Railroad than was necessary, we need not resolve this question.[8] Any error in the jury instruction was harmless, as this second interrogatory, relating to causation, was conditional on an affirmative answer to the first interrogatory, relating to situs. Having found that Newsome did not sustain an injury on August 3, 1982, at the chip pit, the jury never reached the second interrogatory. The Railroad's rights, therefore, could not have been affected.

### III.

Based on the foregoing reasons, we AFFIRM the judgment of the district court.

AFFIRMED.

---

8. When the jury instruction is viewed in its entirety, the district court's error, if any, in using proximate cause language may have been cured. The paragraph directly following the sentences to which Railroad objects reads: "[I]f you find from a preponderance of the evidence that the wood chips on the walkway above the chip pit contributed in any way to Newsome's fall, which resulted in his injury, then you would be justified in finding that the chip pit did contribute to his fall and injury."