**HOUSTON LIGHTING & POWER COMPANY, Appellant,**

v.

**ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellee.**

No. 06–92–00083–CV.

Court of Appeals of Texas, Texarkana.

Aug. 31, 1993.

Rehearing Denied Sept. 21, 1993.

*tially set* for December 9, 1991" (emphasis added).

R. Paul Yetter, Baker & Botts, Houston, for appellant.

Douglas W. Poole, Kenneth J. Bower, McLeod, Alexander, Powel, Apffel, Galveston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Houston Lighting & Power Company (HL & P) appeals from a judgment requiring it to pay Atchison, Topeka & Santa Fe Railway (Santa Fe) $305,000.00 on the basis of an indemnity agreement. The issues on appeal are whether the indemnity agreement applies to the type of conduct which gave rise to this suit, whether Santa Fe is precluded from seeking indemnification from HL & P because it breached a condition precedent, and whether there is no evidence or insufficient evidence to support the jury's findings justifying liability. We resolve these issues in favor of Santa Fe and affirm.

HL & P operates a power plant at Smither's Lake in Fort Bend County. In 1957, HL & P and Santa Fe executed an agreement regarding the care, use, and maintenance of a railroad track used to bring coal to the plant. The original agreement contained the following indemnity provision:

> [HL & P] agrees to indemnify and hold harmless the Railway Company for loss, damage or injury from any act or omission of [HL & P], its employes (sic) or agents, to the person or property of the parties hereto and their employes (sic), and to the person or property of any other person or corporation, while on or about The Track; and if any claim or liability shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.

HL & P later installed a rotary coal dumper at the Smither's Lake plant. A rotary coal dumper unloads a coal train by moving each coal car into position inside the dumper, inverting the car, and emptying the coal into an underground pit. The dumper is located on a section of railroad track that exclusively serves the dumper. The track runs up to the entrance of the dumper and ends, but then starts again at the exit end of the dumper. The coal cars are linked by rotary couplers that allow a coal car to be inverted while still linked to the cars in front and behind. The only car on the train that does not have this rotary coupler is the caboose. Before the coal car attached to the caboose can be emptied, it must be uncoupled from the caboose.

At the time HL & P installed the coal dumper, the original agreement between HL & P and Santa Fe was amended and the following indemnification clause was added:

> Notwithstanding anything contained in Section 3 of Article I of Original Contract to the contrary, [HL & P] agrees that it will at all times indemnify and save harmless Railway Company against all claims, demands, actions or causes of action, arising or growing out of loss of or damage to property, including said rotary dumper and appurtenances, and injury to or death of persons, including employees of Railway Company, resulting in any manner from the construction, maintenance, use, state of repair or presence of said rotary dumper and appurtenances under or adjacent to The Track, whether such loss, damage, injury or death be caused or contributed to by the negligence of Railway Company, its agents or employees, or otherwise, . . . .

On June 25, 1988, Timothy McNeill, a railroad employee, was working on a coal train that was being unloaded at the Smither's Lake plant. As the final three coal cars pulled up to the dumper entrance, McNeill uncoupled the caboose from the last coal car. The remaining cars were emptied, and the dumper was turned off. Before pulling away from the dumper site, the train backed up to recouple with the caboose. Under the Federal Safety Appliance Act, the couplers on the cars and the caboose are supposed to remain aligned so they will automatically couple upon impact with the preceding or following car without the necessity of workmen having to go between the cars. 45 U.S.C.A. § 2 (West Supp.1993).

On the day of the injury, McNeill noticed that the couplers on the last car and the caboose were misaligned. McNeill decided to manually align the couplers. General procedure is to align only one of the couplers, usually the coupler on the coal car because it is lighter and not as rigid as the coupler on the caboose. Although the coupler on the caboose is heavier than the rotary couplers on the coal cars, McNeill chose to adjust the caboose's coupler first because the last car

was still inside the coal dumper. The caboose was in the same spot where McNeill had uncoupled it from the last three coal cars, approximately 150 feet from the dumper. As he was aligning the coupler on the caboose, McNeill injured his back.

McNeill sued his employer, Santa Fe, alleging that Santa Fe had violated 45 U.S.C.A. §§ 51–60 (West 1986), the Federal Employers' Liability Act (FELA), by failing to provide a safe work place. McNeill argued that Santa Fe was negligent for failing to provide McNeill with a strap with which he could align the couplers and for allowing McNeill to adjust the coupler without assistance. In addition, McNeill claimed that Santa Fe had failed to comply with the Safety Appliance Act, 45 U.S.C.A. §§ 1–12 (West Supp.1993). Santa Fe asserted contributory negligence and entered a general denial. Santa Fe also filed a third-party suit against HL & P for contractual indemnification should the railroad be found liable for McNeill's injury.

The jury found that it was necessary for McNeill to go between the caboose and the coal car in order to couple the cars, that the alignment of the caboose coupler was a legal cause of McNeill's injuries, and that the coupler on the caboose was misaligned as a result of an equipment failure or defect. The jury also found that McNeill's injuries were sustained at the rotary coal dumper and were the result of the presence or use of the coal dumper. The jury decided that the negligence of both the railroad and McNeill was a legal cause of McNeill's injury and found that Santa Fe was fifty-five percent negligent and McNeill was forty-five percent negligent. The jury awarded McNeill a total recovery of $305,000.00.

The trial court awarded McNeill $305,000.00 and ordered HL & P to indemnify Santa Fe. McNeill's recovery was not reduced by forty-five percent, his percentage of contributory negligence. Apparently, the final judgment was based on Santa Fe's violation of the Safety Appliance Acts, which provides that an injured employee shall not be held accountable for his contributory negligence if the railroad's violation of an employ-ee safety statute contributed to the injury. 45 U.S.C.A. § 53.

■ A railroad is strictly liable under the Federal Employers' Liability Act for injuries to a railroad employee resulting in whole or in part from a violation of the Safety Appliance Act. *Crane v. Cedar Rapids & Iowa City Ry. Co.,* 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969). The injured employee is required to prove only the statutory violation and is relieved of the burden of proving negligence. *Id.*

■ Santa Fe argues that a violation of the Safety Appliance Act simply establishes negligence per se and is thus encompassed in the negligence language of the indemnity clause. *See Urie v. Thompson,* 337 U.S. 163, 189, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949). However, all issues of negligence have been swept out of cases brought under the Safety Appliance Acts. *O'Donnell v. Elgin, Joliet & E. Ry. Co.,* 338 U.S. 384, 390–94, 70 S.Ct. 200, 204–06, 94 L.Ed. 187 (1949). The duty imposed by the Safety Appliance Act is an absolute one and not based upon negligence of the carrier and, once a violation of the safety acts is established, only causal relation is in issue. *Affolder v. New York, Chicago & St. Louis R.R. Co.,* 339 U.S. 96, 98, 70 S.Ct. 509, 510, 94 L.Ed. 683 (1950); *Carter v. Atlanta & St. Andrews Bay Ry. Co.,* 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949). Furthermore, a violation of the Safety Appliance Act creates liability under FELA if the defect or insufficiency of the equipment contributed in fact to the injury, regardless of whether the injury flowing from the breach was the injury the statute sought to prevent. *Kernan v. American Dredging Co.,* 355 U.S. 426, 432–33, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958).

■ HL & P argues that Santa Fe, by including only negligence language in the indemnity clause, has limited the scope of the indemnity clause to negligence causes of action alone and has foreclosed the possibility of recovery on a strict liability theory. Santa Fe included the negligence language in the indemnity provision to satisfy the "clear and unequivocal" standard that determined whether an indemnity clause entitled the

named indemnitee to indemnification for his own negligence. *See Joe Adams & Son v. McCann Constr. Co.*, 475 S.W.2d 721 (Tex. 1971), *overruled by Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex.1987). The "clear and unequivocal" standard has since been replaced by the stricter "express negligence" doctrine. *Ethyl,* 725 S.W.2d at 708.

■■■ HL & P, relying on a line of products liability cases, contends that an indemnity provision will not protect an indemnitee against strict liability unless that obligation is expressly stated in the contract. A seller of a product in a defective condition unreasonably dangerous to the user is strictly liable for the physical harm caused to the user if the seller is engaged in the business of selling such a product and the product is expected to and does reach the user without substantial change from the condition in which it was sold. *Rourke v. Garza,* 530 S.W.2d 794, 804 (Tex.1975); *see also* RESTATEMENT (SECOND) OF TORTS § 402A (1965). Contracts indemnifying one against his strict liability for distribution of an unreasonably dangerous product are exceptions to the usual business practice in the same manner as contracts that indemnify one against his own negligence. *Rourke,* 530 S.W.2d at 804. The present case, however, does not involve the sale or lease of an unreasonably dangerous product and the "express products liability" rule is not applicable.

■■■ Liability under a contractual indemnity clause is fixed by the terms of the indemnitor's promise and cannot be extended beyond that which is included within a reasonable construction of the contract terms. *Ideal Lease Serv. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983). Under general contract law principles, the court is to ascertain and give effect to the intentions of the parties as expressed in the agreement. *Id.*

■■■ The Safety Appliance Acts do not create a federal cause of action for an injured employee who seeks compensation for his injuries; instead, FELA embraces claims of an employee based on violations of the Safety Appliance Act. *Crane,* 395 U.S. at 166, 89 S.Ct. at 1708; *see* 45 U.S.C.A. §§ 51, 53. The terms of the indemnity contract express-

ly cover the injuries of railroad employees, and HL & P presumably realized at the time it agreed to the indemnity clause that Santa Fe employees would use FELA to recover damages for their injuries. Courts presume the parties to a contract knew and took into consideration the laws affecting matters contracted about, unless the contrary clearly appears in the terms of the contract. *See Gulf Prod. Co. v. Cruse,* 271 S.W. 886, 887 (Tex.Comm'n App.1925, judgm't adopted). It was not unreasonable, given the broad language of the indemnity clause, for the trial court to construe the clause as covering Safety Appliance Acts-based FELA claims.

■■■ HL & P argues that Santa Fe is precluded from seeking indemnification because the agreement is "subject to all laws and orders affecting performance of the work provided for hereby or the use or procurement of materials therefor." HL & P asserts that compliance with the law was a condition precedent to recovery; since Santa Fe violated the Safety Appliance Acts and breached the condition, Santa Fe is not entitled to indemnity.

■■■ The intentions of the parties, ascertained by looking at the entire document, determine whether a condition precedent exists. *Criswell v. European Crossroads Shopping Ctr.*, 792 S.W.2d 945, 948 (Tex.1990). Because of their harshness, conditions are not favorites of the law and, in construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible. *Id.*

■■■ The words "subject to," used in their ordinary sense, mean "subordinate to," "subservient to," or "limited by." *Kokernot v. Caldwell,* 231 S.W.2d 528, 531 (Tex.Civ. App.—Dallas 1950, writ ref'd), *cited with approval in Cockrell v. Texas Gulf Sulphur Co.,* 157 Tex. 10, 299 S.W.2d 672 (1956). "Subject to" are words of limitation and do not create any affirmative contractual obligations. *Rourke v. Garza,* 511 S.W.2d 331, 343 (Tex. Civ.App.—Houston [1st Dist.] 1974), *aff'd,* 530 S.W.2d 794 (Tex.1975).

The clause making the agreement between HL & P and Santa Fe subject to all perti-

nent laws and orders limits the scope of the contract in recognition of the axiom that a contract to do something that contravenes the provisions of a statute or ordinance is void. *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947). Enforcement of the indemnity clause in this case does not violate any law or order.

The indemnity provision shifts Santa Fe's FELA liability, including liability for Safety Appliance Acts violations, to HL & P. There is no contractual condition precedent requiring Santa Fe to comply with the safety acts. To hold otherwise would render the indemnity clause, as it applies to railroad employees, meaningless. *See R & P Enter. v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 519 (Tex. 1980) (construing the entire instrument so that none of the provisions will be rendered meaningless); *Page v. Superior Stone Prod., Inc.,* 412 S.W.2d 660, 663 (Tex.Civ.App.— Austin 1967, writ ref'd n.r.e.) (if there is some other reasonable construction, the courts will not presume the parties intended to call for an impossible condition precedent as a test of performance).

 HL & P maintains that there is no evidence or insufficient evidence that McNeill was injured at the rotary coal dumper or as a result of the presence or use of the dumper.

The jury found that McNeill's injuries were sustained at the rotary coal dumper. HL & P claims that this finding is unsupported because the evidence establishes that McNeill was 150 feet away from the dumper, standing on the track leading into the dumper, when he was injured. HL & P is taking too narrow a view of what "at the rotary coal dumper" means. "At" is an elastic and somewhat indefinite word used to indicate presence or occurrence in, on or near. *Caldwell v. State,* 136 Tex.Crim. 524, 126 S.W.2d 654, 655–56 (1939); *see also* BLACK'S LAW DICTIONARY 124 (6th ed. 1990). Furthermore, the indemnity contract does not constrict the word "at" by imposing any explicit geographic limits that require the injury to occur within some specified distance from the dumper.

 HL & P further argues that the Safety Appliance Acts violation precludes re-covery because the violation is the only legal cause of McNeill's injury. This argument is similar to the dissenting opinion in *Illinois Cent. Gulf R.R. Co. v. International Paper Co.,* 824 F.2d 403, 408–09 (5th Cir.1987) (Williams, J., dissenting). In *Illinois Central,* the railroad and a paper mill had an indemnity agreement, similar to the supplemental agreement between HL & P and Santa Fe, covering a spur track and chip pit. When a hopper car failed to couple automatically after being moved off of the pit, a railroad employee tried to couple the cars manually but slipped and fell on a pile of wood chips. The employee filed suit under FELA. The employee and the railroad settled out of court; the railroad then sued the paper mill for indemnification and won. *Id.* at 404–05. The majority remanded the case for a partial new trial because factual findings regarding whether a causal connection existed between the chip pit and the employee's injury needed to be made. *Id.* at 407.

HL & P and the dissent in *Illinois Central* paraphrase from an opinion of the Supreme Court and argue that once the Safety Appliance Act violation was found to play even the slightest part in producing the injury it does not matter that, from the evidence, the jury may also attribute the injury to other causes, including the employee's own negligence. *See Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). This argument fails for two reasons. First, the *Rogers* case was not an interpretation of an indemnity contract. *Rogers* discussed the relationship between a railroad and its employee under federal law, which eases the employee's burden in a suit to recover damages for work-related injuries. *Rogers* did not address or limit the risk-shifting that occurs between an indemnitee and an indemnitor. Furthermore, the majority in *Illinois Central* held that the indemnity agreement would be triggered and the railroad could recover from the paper mill if the fact finder found a causal connection between the employee's injury and the chip pit. *Illinois Cent.,* 824 F.2d at 407. In a subsequent appeal of the same case, the circuit court suggested, but did not affirmatively hold, that "causal connection" is a different, less onerous burden than proximate or

legal cause. *Illinois Cent. Gulf R.R. Co. v. International Paper Co.*, 889 F.2d 536, 543 (5th Cir.1989).

The indemnity clause as agreed to by Santa Fe and HL & P does not require that the dumper be a legal cause of the injury; the clause requires that the injury result in any manner from the use or presence of the dumper. McNeill was a member of the railroad crew that managed the coal dumping process on the day of his injury, and he was standing on a spur track that exclusively serves the coal dumper. McNeill was attempting to align the caboose coupler to facilitate automatic coupling between the caboose, which had been detached from the rest of the train in order to complete the dumping process, and the preceding coal car that still sat in the dumper. He was 150 feet from the rotary coal dumper at the time of the injury because that is where the caboose was left when it was unhooked from the preceding three coal cars, each car being approximately fifty feet long.

In reviewing "no evidence" points of error, the reviewing court considers only the evidence and inferences that tend to support the jury's finding and disregards all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). If there is any evidence of probative force to support the finding, the point must be overruled. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). Evidence supports the jury findings that the injury occurred at the coal dumper and as a result of the use or presence of the dumper.

HL & P alternatively claims that the evidence is factually insufficient to support the jury findings. However, in a FELA case, this court is precluded from reviewing the jury findings and evidence for factual sufficiency. *Texas and Pac. Ry. Co. v. Roberts*, 481 S.W.2d 798, 800 (Tex.1972); *Missouri Pac. R.R. Co. v. Roberts*, 849 S.W.2d 367, 370 (Tex.App.—Eastland 1993, writ denied); *Nobles v. Southern Pac. Transp. Co.*, 731 S.W.2d 697, 698 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *St. Louis Southwestern Ry. Co. v. Greene*, 552 S.W.2d

880, 882 (Tex.Civ.App.—Texarkana 1977, no writ). Even if this court could review the factual sufficiency issues, a consideration of all of the evidence does not establish that the evidence is so weak that the jury's findings are clearly wrong and manifestly unjust.

We affirm the trial court's judgment.