**SOUTHERN PACIFIC TRANSPORTATION COMPANY and St. Louis Southwestern Railway Company, Appellants,**

v.

**VOLUNTARY PURCHASING GROUPS, INC., Appellee.**

No. 3:98–CV–051.

United States District Court,
E.D. Texas,
Paris Division.

March 7, 2000.

David W. Elrod, Michael Calvin Wright, Mark A. Calhoun, Elizabeth Reding Gambrell, Calhoun & Stacy, Dallas, TX, for

Southern Pacific Transportation Co. and St. Louis Southwestern Railway Co.

James Patrick Kelley, Ireland, Carroll & Kelley, Tyler, TX, for Voluntary Purchasing Groups, Inc.

Hal F. Morris, Attorney General's Office, Collections Division, Austin, TX, for Texas Natural Resource Conservation Commission and Natural Resource Damage Trustees.

Gregory Getty Hesse, Lynnette Randee Warman, Jenkens & Gilchrist, Dallas, TX, for Official Unsecured Creditor's Committee of Voluntary Purchasing Groups Inc.

### ORDER DENYING APPELLEE'S MOTION TO DISMISS APPEAL AS MOOT

SCHELL, District Judge.

This matter is before the court on the motion to dismiss appeal as moot (Dkt. # 52) filed by Appellee Voluntary Purchasing Groups, Inc., ("VPG") on May 18, 1999, and joined by the Unsecured Creditors' Committee ("the Committee") on May 27, 1999. Appellants Southern Pacific Transportation Company and St. Louis Southwestern Railway Company (collectively "the Railroads") filed a response in opposition to the motion on June 11, 1999. On June 24, 1999, the Committee and VPG filed separate replies to the Railroads' response. On December 10, 1999, the Railroads filed a supplemental response in opposition to the motion and VPG filed a reply to that supplemental response on February 15, 2000. By this motion, VPG and the Committee ask the court to dismiss the Railroads' appeal of the bankruptcy court's confirmation order on the ground that it has become moot due to the substantial consummation of VPG's Plan of Reorganization. Having considered the parties' detailed submissions in light of the applicable law, the court concludes that the

motion to dismiss appeal as moot should be DENIED.

### DISCUSSION

VPG and the Committee invoke the doctrine of equitable mootness as a basis for dismissing the Railroads' appeal. More specifically, they assert that VPG's Plan of Reorganization ("the Plan") has been so substantially consummated since its effective date of November 1998 that reversing the Plan now would be inequitable even if the Railroads' claims were deemed viable. The Railroads respond by arguing that the Plan has not been substantially consummated, that their appeal need not be dismissed even if substantial consummation has occurred because effective judicial relief is still available to them, and that the law of the case doctrine prevents VPG and the Committee from pursuing this motion given that the equitable mootness issue has already been considered and rejected by the Fifth Circuit. The court agrees with the Railroads that their appeal is not equitably moot and that the law of the case doctrine is applicable in this instance.

### A. Equitable Mootness Doctrine

"Mootness" in the context of bankruptcy appeals is not an Article III inquiry as to whether a live controversy is presented, but is instead a recognition by the appellate courts that there is a point beyond which they cannot equitably order fundamental changes in reorganization actions.[1] Equitable mootness does not implicate an appellate court's jurisdiction but is a matter of discretion. As the Fifth Circuit stated: "Although it is true that this court '*may* decline to consider the merits of a confirmation order when there has been substantial consummation of the plan such that effective judicial relief is no longer available,' this equitable mootness doctrine is prudential rather than jurisdictional." [2] In *In re Berryman*, the court explained that when assessing the applica-

---

1. *See In re Manges,* 29 F.3d 1034, 1038–39 (5th Cir.1994).

2. *In re Vineyard Bay Development Co., Inc.,* 132 F.3d 269, 271 (5th Cir.1998) (emphasis added and citations omitted).

bility of the equitable mootness doctrine courts have historically looked at three main factors: (1) whether a stay has been obtained; (2) whether the plan has been substantially consummated; and (3) whether the relief requested would affect the rights of parties not before the court or the success of the plan.[3] Obviously, the burden is upon the party asserting the equitable mootness doctrine to prove that it applies.

■ When applied here, the *Berryman* factors support the finding that the Railroads' appeal is not moot. To begin with, although the Railroads did not initially obtain a stay in this case, a stay has since been granted and the Fifth Circuit has declared that earlier decisions denying a stay were made in error. The court finds it significant that the Railroads did not sit idly by as VPG's Plan proceeded toward implementation, but instead took nearly every conceivable step to get this court, the bankruptcy court, and the Fifth Circuit to recognize the necessity of granting a stay. When coupled with the fact that the Railroads ultimately prevailed in their attempts to obtain a stay, the Railroads' persistent pursuit of a stay at every stage of this case distinguishes the case from those cited by VPG and the Committee where it was held that an appellant's unsuccessful efforts to obtain a stay are of little relevance under an equitable mootness analysis.

Turning to the second *Berryman* factor, the court assumes for present purposes that VPG and the Committee have made an adequate showing of substantial consummation and that this factor supports a finding of mootness. However, "[s]ubstantial consummation … is merely a subpart of the overall mootness balancing test."[4]

As the Fifth Circuit has repeatedly stated: "Substantial consummation of a reorganization plan is a momentous event, but it does not necessarily make it impossible or inequitable for an appellate court to grant effective relief."[5] Thus, it is not enough to simply make a showing of substantial consummation, but it must also be shown that VPG's Plan "has been so substantially consummated that effective judicial relief is no longer available."[6]

As for the third *Berryman* factor, the court finds inadequate support in the record for the conclusion that innocent third parties not before the court would be adversely affected if VPG's Plan were ultimately reversed and replaced by a successor plan. This is important because the Fifth Circuit's decisions dealing with equitable mootness suggest that the impact of reversal on innocent third parties is a critical factor to consider. For example, the *Manges* opinion emphasized the need to protect the interests of non-adverse third parties who have acted in reliance on the debtor's plan.[7] Indeed, that Court found it "most significant" that certain real property which was the centerpiece of that litigation had been sold to non-creditor third parties shortly after the plan had been confirmed in that case.[8] Here, VPG and the Committee do not identify any such innocent third-parties who have made commitments in reliance on VPG's Plan and will suffer widespread prejudice if the Plan were ultimately reversed.

As the Railroads point out, the claimants who are most affected by the Plan and the steps taken toward implementation thus far (Classes 4, 5, 7, & 9) are all parties to this appeal. The Committee represents all 2000 + holders of Class 7 and 9 claims and all Class 4 trade creditors, and the State of

---

**3.** See *In re Berryman Products, Inc.*, 159 F.3d 941, 944 (5th Cir.1998).

**4.** *Manges*, 29 F.3d at 1041.

**5.** *In re U.S. Brass Corp.*, 169 F.3d 957, 961 (5th Cir.1999) (citing *Manges*, 29 F.3d at 1042–43).

**6.** *Berryman*, 159 F.3d at 944.

**7.** See *Manges*, 29 F.3d at 1038–43.

**8.** *Id.* at 1038.

Texas (Class 5) is also an appellee in this action. Thus, none of those parties could be properly deemed innocent third parties who are not before the court. Indeed, the Railroads appear to be correct when they argue that this case is distinguishable from the cases relied upon by VPG and the Committee in that here "[t]here has been no third-party sale of property, no third-party investment of funds in the reorganized debtor, no renegotiated leases with third-parties, and no third-party settlements with the debtor." [9]

Although granting the relief the Railroads seek would affect the success of VPG's Plan in the sense that it would require modification or replacement of the Plan with one that appropriately addresses the best interests of all creditors, it would not necessarily prevent VPG from successfully reemerging from bankruptcy with a viable plan of reorganization. Despite VPG's assertion to the contrary, it does not appear that modification or replacement of its Plan would necessarily "frustrate creditor relations and the emergence of [the debtor] as a viable going concern in the economy." [10] While the Committee has submitted affidavits from three of VPG's trade creditors in support of the argument that reversal of the Plan would likely result in the withdrawal of favorable terms of credit and the return to burdensome cash-on-delivery terms that were in effect pre-confirmation,[11] those affidavits are not helpful to the position advanced by VPG and the Committee. The court bases this conclusion on two factors.

First, each of the three affidavits submitted by the Committee states that the trade creditors in question continued to extend credit to VPG throughout the pendency of this case, including during the

period before confirmation of the Plan.[12] This shows that VPG can obtain credit even in the absence of a confirmed plan of reorganization. Second, neither VPG nor the Committee refutes the Railroads' contention that VPG's financial position actually improved during the period of time that its creditors purportedly withdrew the terms of credit that are now claimed to be critical to VPG's continued survival.[13] Thus, it is not even clear that the loss of preferred terms of credit by VPG would threaten its ability to prosper. It is also noteworthy that the trade creditors' affidavits do not suggest that they will no longer supply VPG with necessary goods or services under any terms or conditions, nor is there any evidence that those particular creditors are the only suppliers to which VPG can turn to meet its business needs.

When considered as whole, therefore, the court finds that the circumstances of this case militate against finding that the Railroads' appeal should be dismissed on equitable mootness grounds. In reaching this conclusion, the court finds it significant that many of the funds VPG has released pursuant to the Plan have not yet been distributed to any claimants but have merely been placed in escrow accounts from which they can be retrieved without difficulty. Hence, unlike many of the cases relied upon by VPG and the Committee, this case apparently involves few if any "irretrievable" or "irreversible" depletions of VPG's assets and little or no "critical transactions" that would need to be undone.[14] Additionally, it appears that many of the other expenditures made pursuant to the Plan would be required under any confirmable plan. Presumably, such amounts would not need to be recovered from affected claimants at all but could

---

9. Railroads' Response to Appellee VPG's Motion to Dismiss Appeal as Moot, at 20.

10. *Berryman,* 159 F.3d at 946.

11. *See* Committee's Joinder in Debtor's Motion to Dismiss Appeal as Moot, Ex. A.

12. *See id.*

13. *See* Railroads' Response to Appellee VPG's Motion to Dismiss Appeal as Moot, at 21.

14. *See, e.g., Manges,* at 1042–43; *In re Block Shim Development Company–Irving,* 939 F.2d 289, 291 (5th Cir.1991).

simply be treated as credits under a new or modified plan.

In sum, the court concludes that VPG and the Committee have not carried their burden of showing that the doctrine of equitable mootness should be applied to this case. They have failed to establish that the Plan has been so substantially consummated that effective judicial relief that does not unduly burden innocent parties is no longer available to the Railroads. Although payments have been made to or otherwise set aside for a number of creditor classes, it appears that most if not all of those classes receiving distributions would be paid under any plan, many of the payments are in escrow accounts and have not yet been distributed to creditors, and significant aspects of VPG's Plan have not yet been implemented at all. Further, no serious harm to innocent third parties has been shown to be a likely consequence of reversal of VPG's Plan. Finally, the Railroads did everything they could to stay the bankruptcy court's confirmation order and ultimately succeeded in their attempts. For each of these reasons and those discussed above, the court is of the opinion that the Railroads' appeal should not be dismissed as equitably moot.

### B. Law of the Case Doctrine

■ Even were the court to reach the opposite conclusion on the issue of equitable mootness, it would still deny VPG's motion to dismiss on the alternative ground that it is barred by the law of the case doctrine. Under that doctrine, "an issue of law or fact decided by an appellate court may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal."[15] Importantly, the law of the case doctrine "comprehends things decided by necessary implication as well as those decided explicitly."[16] In this case, the Committee moved the Fifth Circuit to dismiss as moot the Railroads' appeal of this court's denial of a stay on substantial consummation grounds. That motion is materially identical to VPG's instant motion to dismiss this appeal as moot. The Railroads argue that because the Fifth Circuit already considered and rejected the Committee's earlier motion, the same issue cannot be revisited in a motion filed by VPG. The court agrees. Because equitable mootness would apply, if at all, in the same manner to the Railroads' appeal of this court's denial of a stay as to their entire appeal, the Fifth Circuit's decision on the former issue obviously extends to the latter issue as well.[17]

VPG argues that the Fifth Circuit's order denying the Committee's motion was no more than a procedural ruling recognizing that an appeals court should not consider an issue that the district court itself has not yet considered. However, the court finds nothing in the record or the language of the order indicating that the denial of the motion was anything other than a ruling on the merits. Had the Fifth Circuit intended its order to have the effect VPG suggests, it could have easily expressed that intent explicitly. Significantly, the motion was considered and ruled upon by the same merits panel that heard oral argument, rather than being reviewed by an interim motions panel that

---

15. *United States v. Becerra,* 155 F.3d 740, 752 (5th Cir.1998) (quoting *Illinois Cent. Gulf R.R. v. International Paper Co.,* 889 F.2d 536, 539 (5th Cir.1989)).

16. *Conkling v. Turner,* 138 F.3d 577, 587 (5th Cir.1998) (citation omitted).

17. The court notes that a party will not be bound by the law of the case if it is shown that " '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to such issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.' " *United States v. 8.41 Acres of Land,* 783 F.2d 1256, 1259 (5th Cir.1986) (quoting *EEOC v. International Longshoremen's Association,* 623 F.2d 1054, 1058 (5th Cir.1980)). However, neither VPG nor the Committee argue that any of these exceptions apply.

might be less familiar with the circumstances of this case.

VPG also suggests that the Fifth Circuit's decision on the Committee's motion is entitled to less weight because it was issued without written opinion. However, VPG cites no cases to support that view and the court is aware of none.[18] The court similarly finds that VPG's argument about whether the Fifth Circuit merits panel should have adhered to the prior decision of an interim motions panel denying the Railroads' request for an emergency stay has no bearing on whether this court is bound by the merits panel's decision denying the Committee's motion to dismiss appeal as moot. In short, the parties have presented the court with no legal authority indicating that a district court is free to disregard the prior opinion of a superior appellate court on an issue pending before it in the same case. The court thus concludes that the law of the case doctrine is applicable here.

### CONCLUSION

For the reasons given and on the authorities cited, the motion to dismiss appeal as moot filed by VPG and joined by the Committee is hereby DENIED. It is so ORDERED.

---

**18.** *See Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 877 (5th Cir.1981) (recognizing binding effect of prior panel's order issued without opinion on law of the case grounds).